UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 14-CV-21803-WILLIAMS

CHEYLLA SILVA and JOHN PAUL JEBIAN,

    Plaintiffs,

vs.

BAPTIST HEALTH SOUTH FLORIDA, INC.,
et al.,

    Defendants.
_____/

## ORDER

**THIS MATTER** is before the Court on the supplement to motion for summary judgment on the issue of deliberate indifference filed by Defendants Baptist Health South Florida, Inc. ("Baptist Health"); Baptist Hospital of Miami, Inc. ("Baptist Hospital"); and South Miami Hospital, Inc. ("SMH"). (DE 156).[1] As explained below, because the

---

[1] The Court addresses this issue after more than three years of litigation. Defendants previously filed a motion for summary judgment arguing, in part, that the undisputed facts show they were not deliberately indifferent to Plaintiffs' federally protected rights (DE 60 at 10-16). Plaintiffs' response offered no direct opposition to these deliberate indifference arguments. (DE 79). Consequently, in granting summary judgment at an earlier stage in the proceedings on a separate issue, the Court did not address Defendants' deliberate indifference arguments. (DE 133). On appeal, the Eleventh Circuit reversed the Court's order granting summary judgment as to injunctive relief, but remanded on the question of whether a triable issue of fact existed as to Defendants' alleged deliberate indifference. (DE 149 at 32). After remand, the Court permitted the Parties to brief the issue on the existing record and Defendants filed the supplement now before the Court. (DE 156). Plaintiffs Cheylla Silva and John Paul Jebian then filed a response that added new material to the record in contravention of the Court's instructions. (DE 158). Defendants then filed a reply in support of their supplement (DE 159) and the Court held oral argument (DE 160). At oral argument, the Court permitted Defendants the opportunity to file a response to Plaintiffs' new evidence (DE 162). After oral argument, Plaintiffs filed an additional notice of supplemental authority without asking leave of the Court. (DE 161).

1

undisputed facts establish that Defendants were not deliberately indifferent to Plaintiffs' federally protected rights, Defendants' motion for summary judgment on deliberate indifference (DE 60; DE 156) is **GRANTED**.

I.  **BACKGROUND**

This is a disability discrimination case. Defendants are two Miami-area non-profit hospitals and their non-profit parent company. Plaintiffs Cheylla Silva and John Paul Jebian are unrelated deaf individuals who allege that, during their many visits to Defendants' facilities, Defendants ineffectively communicated with them and were deliberately indifferent to their federally-protected rights. Consequently, Plaintiffs filed this lawsuit seeking injunctive relief and compensatory damages pursuant to the Americans with Disabilities Act ("ADA") and Rehabilitation Act of 1973 (the "RA"). The Eleventh Circuit determined that Plaintiffs' injunctive relief claims may proceed to trial because genuine issues of material fact exist as to whether Defendants provided Plaintiffs with effective communication as required by the ADA and RA. (DE 149); *see also Silva v. Baptist Health S. Florida, Inc.*, 856 F.3d 824 (11th Cir. 2017). The sole question now before the Court is whether Plaintiffs' damages claim may also proceed to trial, the answer to which depends on whether triable issues exist regarding whether Defendants were deliberately indifferent to each Plaintiff's federally protected rights to effective communication.

By their count, Silva and Jebian visited Defendants' facilities a combined 59 times between March 2009 and April 2016. (DE 158-1; DE 158-2; DE 158-3).[2] Plaintiffs argue

---

[2] The operative complaint (DE 12) alludes to only 18 visits that are appropriate predicates for damages pursuant to the RA: (1) Jebian's November 5, 2010 visit to Baptist Hospital

2

that summary judgment is inappropriate because, in light of their long histories of visits which they contend yielded varying degrees of success obtaining in-person American Sign Language ("ASL") interpreters, a triable issue of fact must exist as to Defendants' deliberate indifference.[3] From each Plaintiff's perspective, "Defendants' failure to fully

---

as a companion to his father, who was still suffering from a heart ailment; (2) Silva's November 29, 2010 visit to Baptist Hospital due to chest and abdominal pain; (3) Silva's January 3, 2011 visit to Baptist Hospital due to stomach pain; (4) Silva's January 4, 2011 visit to Baptist Hospital due to stomach pain; (5) Silva's March 26, 2011 visit to a Baptist Health outpatient facility due to finger pain; (6) Silva's April 2, 2011 visit to Baptist Hospital due to finger pain; (7) Silva's May 9, 2011 visit to Baptist Hospital due to abdominal paint, which turned out to be acute appendicitis requiring an appendectomy; (8) Silva's May 20, 2011 visit to Baptist Hospital due to abdominal pain; (9) Silva's December 20, 2011 visit to a Baptist Health outpatient facility due to vaginal bleeding; (10) Silva's April 16, 2012 visit to Baptist Hospital due to chest pains; (11) Jebian's July 11, 2012 visit to Baptist Hospital due to chest pains; (12) Jebian's July 15, 2012 visit to Baptist Hospital due to lower back and kidney pain; (13) Silva's September 15, 2012 visit to Baptist Hospital due to an ear infection; (14) Silva's December 6, 2012 visit to Baptist Hospital due to chest pain; (15) Silva's March 4, 2013 visit to Baptist Hospital due to shoulder pain; (16) Silva's June 11, 2013 visit to Baptist Hospital due to nausea; (17) Silva's February 25, 2014 visit to Baptist Hospital due to nausea; and (18) Jebian's March 11, 2014 visit to Baptist Hospital, to which he was transferred after a visit to a Baptist Health outpatient center due to injuries from playing football. The complaint also mentions two additional visits that are outside the statute of limitations and thus cannot be the basis for Plaintiffs' damages claim, although they are nevertheless "relevant and admissible to show deliberate indifference": (1) Silva's November 11-12, 2009 visit to Baptist Hospital due to shortness of breath; (2) Jebian's March 29, 2010 visit to Baptist Hospital as a companion to his father, who was suffering from a heart ailment. *See Silva v. Baptist Health S. Florida, Inc.*, 856 F.3d 824, 841 (11th Cir. 2017) (internal quotation marks and citation omitted)

[3] Fourteen of the 59 visits to which Silva and Jebian cite post-date the operative complaint, are not mentioned in the complaint, have no relevance to Defendants' actions during the timeframe at issue, and are thus properly disregarded here: Silva's February 28, 2015, March 9, 2015, and April 6, 2016 visits to Baptist Hospital; Silva's May 19, 2014, July 6, 2014, July 8, 2014, July 18, 2014, August 1, 2014, August 22, 2014, September 8, 2014, September 27, 2014, and February 28, 2015 visits to SMH; Jebian's August 10, 2014 visit to Baptist Hospital; and Jebian's August 10, 2014 visit to a Baptist Health outpatient facility. The record does contain reference to 25 visits—also absent from the complaint—that Plaintiffs made to Defendants' facilities before they filed this lawsuit: Silva's November 6, 2009, November 8, 2009, March 4, 2010, April 21, 2010, September 25, 2011, July 7, 2012, March 15, 2013, May 31, 2013, June 27, 2013, July 25, 2013,

3

and effectively communicate with [them] was a common and repeated occurrence, and not isolated to routine visits or check-ups. In fact, Defendants' failure to communicate with [them] often occurred during critical medical encounters." (DE 61-13 ¶ 11; DE 61-14 ¶ 11).

Plaintiffs' argument rests entirely on their generalized and identical affidavit statements that during each visit, they "repeatedly requested that hospital staff provide a live ASL interpreter to help . . . communicate with nurses and doctors regarding . . . condition and care. On most occasions, no interpreter was present. On some occasions, an interpreter was provided." (DE 61-13 ¶ 7; DE 61-14 ¶ 7). They state, without identifying specific instances, that "[o]n some occasions, hospital staff would attempt to use a video relay interpreting ('VRI') machine to communicate with [them] ... [h]owever, the machine was inoperable or unusable. Sometimes, it appeared that hospital staff could not figure out how to operate the machine. Other times, the picture would be blocked, frozen, or degraded." (DE 61-13 ¶ 10; DE 61-14 ¶ 10).[4] Plaintiffs also point to the fact

---

September 30, 2013, October 16, 2013, October 23, 2013, and March 2, 2014 visits to Baptist Hospital; Silva's March 1, 2009, March 6, 2013, April 2, 2014, and April 29, 2014 visits to SMH; Silva's July 7, 2012 visit to a Baptist Health outpatient facility; and Jebian's November 28, 2010, November 29, 2010, December 1, 2010, May 28, 2012, August 7, 2012, and March 11, 2014 visits to a Baptist Health outpatient facility. Because these 25 visits were not in the operative complaint, they cannot be the basis for damages, but are nonetheless "relevant to whether the hospitals had the requisite knowledge to establish deliberate indifference during" the 18 visits that are the basis for Plaintiffs' RA claims. *See Silva*, 856 F.3d at 841–42.

[4] By Plaintiffs' recollection, on 24 relevant visits to Defendants' facilities, VRI was available but was "never provided or was completely non-operable"; on 12 occasions, VRI was "available, used/functioned for a few minutes, not adequate"; and on 9 occasions VRI was "not available" because Baptist Health's outpatient facilities were not equipped with VRI. (DE 158-1; DE 158-2; DE 158-3).

that Defendants often attempted to communicate with them through family and friends. (DE 61 ¶¶ 28-31, 40-43). Because federal regulations prohibit Defendants from relying "'on an adult accompanying an individual with a disability to interpret or facilitate communication' except in narrow circumstances," Plaintiffs assert that Defendants must have known that in using family to interpret, they were denying Plaintiffs their federally protected rights. Finally, Plaintiffs contend that Defendants' promulgation of policies to ensure effective communication with deaf individuals shows that Defendants had notice that failure to provide the specific accommodations Plaintiffs requested resulted in ineffective communication.

Defendants respond that they have promulgated and diligently adhered to policies for the provision of interpreter services for the deaf. (DE 59 ¶ 3). Those policies provide for a range of services to assist deaf patients and their family members. (DE 59 ¶ 7). One of those services is an in-person interpreter. (DE 59 ¶ 7). Another is VRI, although VRI is not available at Baptist Health's outpatient facilities. (DE 59 ¶¶ 7, 9).[5] At other

---

[5] Plaintiffs focus heavily on purported inadequacies with Defendants' use of VRI, but their objections raise no genuine dispute of material fact as to its deliberate indifference regarding its use. For example, Plaintiffs complain that Defendants often had VRI on hand but failed to provide it; that when Defendants did provide VRI, it was inadequate; and that in some cases Defendants' facilities lacked VRI altogether. (*See generally* DE 158). They also cite Defendants' acknowledgement that VRI could sometimes be choppy or needed to be moved around to avoid interference from other electronic devices (DE 61 ¶ 65). But the fact that VRI might have occasionally malfunctioned—about which the Eleventh Circuit found a triable issue as to negligence—does not alone establish deliberate indifference. Plaintiffs would also need to offer evidence that Defendants failed to address the risk the VRI malfunctions posed to their federally-protected rights. They have not offered such evidence. And they have offered no evidence to support their accusation that Defendants "purposefully adopted" policies to use VRI where their third-party VRI provider Language Access Network ("LAN") suggested such use was inappropriate. (DE 158 at 9). Indeed, save for Plaintiffs' accusation, there is no evidence

5

times, depending on circumstances, Defendants provide patients with other auxiliary aids and accommodations such as "ASL translation via family member, text telephones (TTYs), lip-reading, gestures and written notes." (DE 59 ¶ 59). Defendants also claim that Plaintiffs never complained about the accommodations at the time treatment was provided or that communication was ineffective. (DE 159 at 2).

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case. An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *U.S. ex rel. Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015) (quoting *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014)). Rule 56(c)(3) provides that "[t]he court need consider only the cited materials, but it may consider other materials in the record."

After the movant has met its burden under Rule 56(c), the burden shifts to the nonmoving party who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

---

that Defendants ever relied solely on VRI in situations where they knew VRI would not render effective communication.

U.S. 574, 586 (1986). The non-moving party "may not rely merely on allegations or denials in its own pleading," but instead must come forward with "specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e); *Matsushita*, 475 U.S. at 587. "Thus, to survive summary judgment, the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz*, 780 F.3d at 1050 (citing *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006)).

In evaluating a defendant's motion for summary judgment, the Court views all the evidence in the light most favorable to the plaintiff and resolves all reasonable doubts about the facts in favor of the plaintiff. *See Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 337 (11th Cir. 2012). However an "inference based on speculation and conjecture is not reasonable." *Chapman v. Am. Cyanamid Co.*, 861 F.2d 1515, 1518 (11th Cir. 1988). Accordingly, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Matsushita*, 475 U.S. at 587).

## III. DISCUSSION

Plaintiffs request compensatory damages under § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a). This statute provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Under the RA's implementing regulations, hospitals that receive federal funding must

"afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs." 45 C.F.R. § 84.4(b)(2). Moreover, they must "provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question." 45 C.F.R. § 84.52(d)(1). These aids "may include . . . interpreters . . . and other aids for persons with impaired hearing . . . ." 45 C.F.R. § 84.52(d)(3). However, for "aids, benefits, and services, to be equally effective, [they] are not required to produce the identical result or level of achievement for handicapped and nonhandicapped persons." 45 C.F.R. § 84.4(b)(2).

To establish a right to compensatory damages pursuant to § 504 of the RA, Plaintiffs must prove: (1) that they are qualified individuals with a disability, (2) who were excluded from participation in or denied the benefits of Defendants' services, programs, or activities, or otherwise discriminated against, (3) on account of their disability, and (4) that the exclusion or denial was the result of intentional discrimination. *Martin v. Halifax Healthcare Sys.*, 621 F. App'x 594, 601 (11th Cir. 2015) (citing *Shotz*, 256 F.3d at 1079; *Liese*, 701 F.3d at 344). As to the fourth element, the Eleventh Circuit in *Liese v. Indian River County Hospital District* established that a plaintiff may demonstrate discriminatory intent through a showing of deliberate indifference, which occurs when a defendant knows that a rights violation is substantially likely and fails to act on that likelihood. 701 F.3d at 344-45. Importantly, deliberate indifference "plainly requires more than gross negligence" and "requires that the indifference be a 'deliberate choice,' which is an 'exacting standard.'" *Id.* at 344 (citations omitted). Moreover, the defendant's deliberate

indifference must have been through "an *official* who at a minimum has *authority* to address the alleged discrimination and to institute corrective measures on the [hospital's] behalf [and who] has *actual knowledge* of discrimination in the [hospital's] programs and fails to adequately respond." *Id.* at 349 (emphasis in original) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)).

Four Eleventh Circuit decisions guide the Court's analysis of whether genuine disputes of material fact remain as to deliberate indifference. First, in *Liese*, the plaintiffs repeatedly asked orally and in writing for interpreters, but were not given ASL interpreters either in-person or through an available video interpreter service. *Id.* at 337-39. Instead, they were "laughed at" by an emergency room doctor. *Id.* at 351. Moreover, Liese, the deaf patient plaintiff, clearly informed hospital staff she could not read lips and that she did not understand the majority of her interactions with a specific doctor, Dr. Perry, who ignored her when she could not read his lips or understand his pantomime. *Id.* at 339-40. Liese did not understand why tests performed on her were necessary; she did not understand the results from those tests; she did not understand the reason for her gall bladder surgery when she had presented with chest pains; and she could not understand the doctor's post-operative instructions. *Id.* at 339-41. On these facts, the Eleventh Circuit reversed the district court's grant of summary judgment for the hospital and held that the plaintiffs could present the jury with the issue of whether the defendants were deliberately indifferent to the plaintiffs' federal rights. *Id.* at 356.

Then, on the other end of the spectrum, there are two cases where the Eleventh Circuit affirmed summary judgment for defendant hospitals. In *McCullum v. Orlando Regional Healthcare System, Inc.*, 768 F.3d 1135 (11th Cir. 2014) "the staff at both

hospitals took steps to ensure that they were able to effectively communicate" with the deaf patient plaintiff by using "written notes and visual aids," and "rel[ying] on [the plaintiff's] parents and deaf sister" to interpret using sign language. *Id.* at 1138. Importantly, the plaintiff had not even known that the first hospital could provide a sign language interpreter and so neither he nor his parents asked for one. *Id.* at 1139. Nevertheless, his attending physician at the first hospital "believed that he was effectively communicating" with the plaintiff and the medical records did not cast doubt on that belief. *Id.* At the second hospital, doctors successfully performed surgery on the plaintiff's colon. *Id.* at 1141. Although the plaintiff later testified that he only understood a portion of the preoperative explanation, he gave no indication of his failure to understand at the time he was treated. *Id.* at 1141 n.3. On these facts, the Eleventh Circuit rejected the plaintiff's argument that a reasonable jury could find that the defendant hospitals were deliberately indifferent. *Id.* at 1146-47.

Similarly, in *Martin*, the Eleventh Circuit affirmed summary judgment for the defendant hospital system where three deaf patient plaintiffs sued the defendant hospitals for failing to provide "continuous live interpreting services" during their hospital stays. *Martin*, 621 F. App'x at 594. Two of the three plaintiffs submitted declarations stating that they asked for ASL interpreters but were denied their requests and subsequently did not understand what was said to them. *Id.* at 600. However, they never specified what they did not understand or how their lack of comprehension impacted their treatment. *See Id.* at 602-03 (finding no evidence that the hospital failed to provide proper auxiliary aids, because, among other things, plaintiff "never specifies what, exactly, he failed to understand" in his declaration). The third plaintiff never asked for an in-person interpreter

and indicated that he understood typed notes that the hospital provided to him. *Id.* at 603. Crucially, the hospital system did, in fact, offer and provide patients with auxiliary aids such as written or typed notes, detailed graphics, some in-person live interpreting, and a video interpreting service. *Id.* at 596-600. Consequently, the Eleventh Circuit found that "when a plaintiff cannot show that a defendant failed to provide appropriate communication aids, that plaintiff has also necessarily failed to show that the defendant acted with deliberate indifference." *Id.* at 604.

Finally, in *Sunderland v. Bethesda Hospital Inc.*, 686 F. App'x 807 (11th Cir. 2017), the Eleventh Circuit affirmed summary judgment with respect to some plaintiffs and reversed with respect to others. There, the Court found a genuine issue of material fact on deliberate indifference, where the medical records and the plaintiffs' testimony identified specific instances in which the hospital officials knowingly failed to correct denials of effective communication. *Id.* For example, the Court found a genuine dispute of fact where a plaintiff had to communicate through gesturing, before and after an invasive procedure, even though plaintiff had requested an in-person interpreter and her son had complained that VRI was not working. *Id.* at 817. The Court also found a genuine dispute of fact where plaintiffs indicated they did not understand the VRI interpreter's signing and the hospital failed to provide an alternative aid. *Id.* at 817-818. In each case, the evidence showed that defendants were aware of these deficiencies at the time of treatment and failed to provide alternative aids. *Id.* at 816. By contrast, the Court found no issue of material fact in circumstances where the VRI malfunctioned but defendants were not aware of the malfunction, or where VRI malfunctioned and defendants provided alternative aids such as pen and paper or an in-person interpreter. *Id.* at 818.

Based on the framework provided by these four cases, the Court finds that, in this case, there is no genuine dispute of material fact as to whether Defendants acted with deliberate indifference towards Plaintiffs. As noted, "deliberate indifference plainly requires more than gross negligence. Rather, deliberate indifference requires that the indifference be a 'deliberate choice,' which is an 'exacting standard.'" *Liese*, 701 F.3d at 344 (citations omitted). For example, "bad faith or gross misjudgment . . . may satisfy the standard." *L.M.P. ex rel. E.P. v. Sch. Bd. of Broward Cty., Fla.*, No. 05-60845-CIV, 2014 WL 4771750, at *13 (S.D. Fla. Sept. 24, 2014) (citations omitted). The record, here, contains no indication—other than Plaintiffs unsupported, conclusory allegations—that Defendants were actually aware of any instance in which they communicated ineffectively with Plaintiffs. Aside from these allegations, there is no evidence that Plaintiffs ever complained to or informed Defendants that they were not receiving proper assistance.

Plaintiffs also incorrectly assert that prior settlements, on their own, put Defendants on notice that harm to a federally protected right is likely. Indeed, the case relied upon by Plaintiffs acknowledges that "the relevance of the past complaints is limited by the fact that the hospital subsequently amended its policy designed to prevent violations." *Proctor v. Prince George's Hosp. Ctr.*, 32 F. Supp. 2d 820, 825 (D. Md. 1998). Here, the record demonstrates that Defendants have promulgated policies to ensure the provision of interpreter services for the deaf (DE 59 ¶ 3)—such as VRI, which did not exist when Mr. Jebian and Defendants settled their prior dispute—and that they continually train their staff to identify need for interpretation and to provide appropriate auxiliary aids. (59 ¶ 5,

6, 21-27, 30, 44, 51). Plaintiffs have provided no evidence that Defendants have failed to adhere to those policies.[6]

Finally, in support of their claims, Plaintiffs submitted three charts, with supporting medical records, summarizing their visits to Defendants' facilities over the years (DE 158-1; DE 158-2; DE 158-3). But these charts, which were submitted in violation of this Court's Order of July 5, 2017 (DE 154), do not establish that Defendants acted with deliberate indifference. Indeed, of the forty-five[7] visits listed in the charts, Plaintiffs admit they communicated through VRI in at least nineteen of them. (*See generally* DE 158). In six other visits, Plaintiffs allege that VRI was not provided or malfunctioned. *Id*. But those allegations are refuted by Plaintiffs' own testimony during depositions.[8] (DE 59-1 ¶ 95-96, 96-98, 106-107, 109-110, 117-118; DE 158-2 ¶3). On five occasions, Defendants either refused VRI or refused to be transported to facilities that provided auxiliary aids. (DE 59-1 ¶112). And for the remaining visits, Defendants communicated with Plaintiffs

---

[6] Moreover, there is no evidence in the record that Mr. Jebian, at any time, advised the Defendants that they had violated or failed to comply with the terms of the settlement agreement they had reached over 15 years ago. (DE 59 ¶67). When asked about it during his deposition, Mr. Jebian admitted that he never attempted to enforce the terms of the settlement. (DE 59-2 at 52).

[7] As previously noted, the Court declines to consider those visits listed in the charts that postdate the Complaint.

[8] For example, in her chart, Silva states that "VRI was not provided" when she visited the hospital on November 29, 2010. (DE 158-1 at 5). However, when she was asked about that visit during her deposition, she testified that "[t]hat was the day they were able to use the VRI." (DE 59-1 at 95-96). Similarly, Silva states in her chart that VRI did not function when she visited the hospital on January 3, 2011 (DE 158-1 at 24-25) even though at her deposition she had testified that in that visit, she got VRI and the visit was "fairly uneventful" (DE 59-1 at 96-98). Even if the VRI malfunctioned on some occasions, this is not enough to establish deliberate indifference.

through family members and written notes, but there is no evidence that Plaintiffs complained about these accommodations or that the communication was ineffective at the time they were being treated. (*See generally* DE 158).

In fact, there is no evidence in the record that Plaintiffs ever complained about the accommodations received in any of the visits. Plaintiff Silva admits that she had no issues with Defendants except for her first visit back in 2009 (DE 59-1 at 83). And even for that visit, Plaintiff Silva admits that she "allowed" her brother to interpret, because her brother "knew what was going on," "knows [her] health" and "already knew what was wrong with [her]." (DE 59-1 at 85). Similarly, there is no evidence in the record that Plaintiff Jebian ever complained about the accommodations provided. Although Plaintiffs generally claim that the communication between Plaintiffs and Defendants was ineffective, Plaintiffs failed to raise any complaints to the hospital at the time of their visits and now fail to specify what information they did not understand during these encounters. There is also no evidence that Silva, Jebian or any of the family members that assisted with ASL interpretation told Defendants' staff at that time that the family members were unqualified to interpret for Plaintiffs. See *McCullum*, 768 F.3d at 1148.

The Court finds that Defendants' failure to obtain a live interpreter or VRI—in light of their efforts to provide alternative aids and in light of Plaintiffs' failure to contemporaneously complain about the accommodations provided—at most constituted negligence, and was not a "deliberate choice" to deny Plaintiffs rights as the law requires. See *Liese*, 701 F.3d at 344. Certainly, the facts of this case are not comparable to the circumstances of *Liese*, where a doctor mocked a deaf patient before refusing to provide available accommodations. They are also not comparable to the circumstances of the

14

winning plaintiffs in *Sunderland*, who were able to show, for specific visits involving complex medical procedures, that defendants' doctors refused to provide live-interpretation or alternative aids even though they knew they were not communicating with plaintiffs effectively. *Sunderland*, 686 F. App'x at 816-818 (finding, based on deposition testimony and hospital medical records, that the doctors and nurses were aware that VRI was malfunctioning and no alternative aid was provided). Instead, this record contains no evidence showing that Defendants knew that Plaintiffs' rights were likely being violated. Thus, a reasonable jury could not find that Defendants' personnel acted with deliberate indifference. *See McCullum*, 768 F.3d at 1139, 1146-47 (affirming summary judgment for defendant on deliberate indifference where attending physician believed he was effectively communicating and medical records did not contradict this belief); *Martin*, 621 F. App'x at 604 ("As the name implies, deliberate indifference involves a 'deliberate choice.' Mere negligence is insufficient.") (citations omitted); *Wood v. President & Trustees of Spring Hill Coll. in City of Mobile*, 978 F.2d 1214, 1219 (11th Cir. 1992) ("As a general matter, good faith attempts to pursue legitimate ends are not sufficient to support an award of compensatory damages under section 504."). Accordingly, the Court grants Defendants' motion as to Plaintiffs' compensatory damages claims.

## IV. CONCLUSION

For the reasons above, it is **ORDERED AND ADJUDGED** that Defendants' motion for summary judgment on Plaintiffs' compensatory damages claims (DE 60; DE 156) is **GRANTED** and the case will proceed only as to Plaintiffs' claims for injunctive relief. Plaintiffs' claims for compensatory damages under § 504 of the RA are **DISMISSED**.

**DONE AND ORDERED** in chambers in Miami, Florida, this 22 day of March, 2018.

_____
KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE